The next case that we'll hear is United States v. Buntyn and this is 23-2007. May it please the court, J.K. Theodosia Johnson on behalf of, sorry I'm going to panic there, but on behalf of Mr. Buntyn. This case is governed by the eighth amendment standards and if the conditions here couldn't meet the preponderance standard, there's no way it can meet the highest standard of beyond a reasonable doubt. Well counsel before you really get going, I want to look at the verdict form because as I read your brief you're saying that the defendant in this case was found not guilty as to AS and as to those that under the defendant acting under color while willfully deprive AS of his right to be free from deliberate indifference resulting in bodily injury. That's not a charge of guilt or innocence, that was just to answer your question. The jury said no it wasn't. You have to look at the jury instructions as a whole and the indictment that went back and I think the jury instructions as a whole and the way the instruction, the verdict form ended up, it's clear that they Well it may have been clear to you but it's sure not clear to me. I mean and there's been no objection raised and problems with the jury verdict in this. Well the other thing is throughout the process below everyone agreed that it was just to Mr. Kinney who got the conviction. In the sentencing I hate to argue I see nothing anywhere that says that he was not was acquitted because he's not charged under the verdict form of those offenses. Well in the in the sentencing hearing they had made an objection because he had been acquitted of those things and they didn't want that considered and the judge himself said repeated it by preponderance twice that he found the guilty of this and I think even if you disagree with how the verdict form reads which I don't disagree with it I'm telling you that's what the verdict form says well it says the first part is is he guilty of depriving the rights and it doesn't give the elements right but then if you look at the at the where it split out it gives the elements he was deliberately indifferent and it caused bodily harm and also the the evidence was so duplicative that if they believed Yarberry and about Salamon himself there's no way they given what bodily injury is defined as which is anything essentially. I don't want to take up any more your time on that issue I just want to be clear in my own mind and that you had a chance to respond so proceed thank you. Well despite my colleague's kindness I do have a follow-up because I hit a somewhat similar question as I understand it there's two distinct issues was there a violation not in the eighth amendment but notwithstanding the instruction but in the 14th amendment for pretrial detainees was there intolerable conditions of confinement that were perpetrated by Mr. Button and then there's a rather lenient maximum penalty and then the penalty is aggravated if there's a separate finding that finds not only were there intolerable conditions of confinement but deliberate indifference that caused bodily injury. On the latter issue until I think the second sentence of the conclusion of your reply brief I never saw an argument that there was not sufficient evidence to find deliberate indifference causing bodily injury. Your argument throughout the opening brief and until the conclusion in that one sentence of your reply brief was all that there was not enough evidence of intolerable conditions of confinement. So as a practical consequence I think the question at least for me is well for Yarbury, Salam, all of the other 11, eight pretrial detainees on this van can you consider that the urine bottles that they had to or Salam's the bottom of his foot you know having to walk on urine covered floor of a van that caused trench foot you know those things not bodily injury but on the more general conditions are we confined to look at only the fact that Kenny wasn't able to urinate or can we look at Salam's inability to urinate or that Salam and Yarbury had their hands tied behind their back and couldn't eat for nine hours once they left Sirocco County. That's sort of the practical question that I have and why can't I consider all of those other pretrial detainees on that issue? You can on that issue I agree but even so they didn't establish that there was a substantial risk of serious harm to any of them. Even with the and it was done with a penological purpose here. Mr. Button is not a train corrections officer. PTS gave him barely any training before sending him off on a road trip to transport up to 12 fugitives and felons with an individual with no training. Did he not know that that most people that they have to urinate within a 36 hour period? Well why the log does reflect that? The government admitted in its answer brief on page nine on footnote four I believe that the log isn't entirely accurate that both Yarbury and Kenny testified to stops within there and then and then Yarbury testified that the longest they had gone without a respiratory break was nine to eleven hours. But even so it's not on Mr. Button. You can hear officer Harone when they stop at and that is the problem. Mr. Button had to find a secure facility in order to allow these inmates to use the washroom and he couldn't just go willy-nilly and if he was not given that opportunity that's not on him. That's on the company for not better planning for secure facilities. That's your argument at the trial level which is almost the same argument here and I know counsel you know that in the sufficiency of the evidence standard that is about there's no higher standard almost than that and you're telling me on the basis of just what I've read in the briefs and looked at the record there's no evidence I mean no evidence that that's the standard that from the standpoint of there's just no evidence that's going to support the evidence rule and I'm having a hard time with that standard when I apply it to your case. I'll just be I can't speak for my colleagues that's where I am. Well let's look at the eighth amendment cases that set the benchmark right those are preponderance standards. If you can't meet a preponderance standard there's no way you can meet beyond a reasonable doubt. If you look like at Dyspain it's 36 hours in a cell continuously that's flooded with four inches of water with urine and feces and later uneaten food. But he could urinate. Excuse me? But he could urinate in a cell it was disgusting it was covered with feces these guys are on a van without a bathroom in a water bottle that they empty out and pee in the bottle while it's moving and so there's trench foot from it. So you're saying because there's feces there we had one unpublished opinion that there was feces all over a cell that you can still go to the bathroom. No actually in Dyspain you couldn't well I guess you could urinate there were no working toilets which were adding to the to the mess. It took me a really long time to figure out where you could find something that would show the hierarchy of human waste as the government put it but I finally found it with you close a pool. You close a pool if there's vomit if there's blood or if there's feces they don't even mention urine. So if urine itself has for ages been used as a folk medicine for hormones it's gross there's I mean it's gross. I have no argument on that but that's not the standard. The standard is a substantial risk of serious harm and it can't be a speculative harm. You have to actually point to something that's going to happen. It doesn't have to happen but you can't just say oh it's so gross something's bound to happen. What about what about the testimony for Salam that he actually got trench foot. Now I understand for some reason the jury said that there was not deliberate indifference that caused bodily injury for Salam but again we're not talking about that verdict form which you haven't challenged. We're talking about intolerable conditions of confinement and so if there's a can we not infer giving the evidence the light most favorable the prosecution that for Salam there was at least a serious risk of harm that he has open wounds on his foot. He's walking around in urine covered on a urine covered floor that there is a serious risk of harm i.e. that it could cause trench foot for Salam. Well then you have to look at the second part right which is that it's deliberate indifference and that Mr. Button has to be actually aware of the condition before he disregards it and the evidence is pretty clear that no one knew of that condition of Mr. Salam's foot until they got to Kansas and I mean Yarberry testified that there was a smell but I mean everyone agreed the back of the van smelled they couldn't pinpoint it to Yarberry's um and so what about in Sirocco County when you actually visibly see uh Button throwing uh uh uh well tasing Yarberry and then throwing uh Kenny against the chain-link fence and he ends up with lacerations. Can we not say that in Sirocco County that we can see with their own eyes that there was at least a serious risk of harm for Kenny throwing him against the chain-link fence or for tasing Yarberry? First it's Socorro. It's really bothered me. I'm sorry. Sorry. I grew up in New Mexico. It pains me. Socorro County. Sorry. Both of those are much more uh excessive force than conditions of confinement and really they're they're different analysis right like what is this excessive force and what's the condition of confinement are not the same um and again I point back to the legitimate penological purpose which is Kenny and Yarberry were aggravating these other prisoners. It's a volatile situation. He was aggravating Button because he's yelling at the guy in whatever it is you said Socorro County that that were being tortured on the van and so Button says yeah this guy's gonna be a problem. He's ratting me out and so then he tases Yarberry and throws throws him against the chain-link fence. I you know words can't hurt. I mean we all tell our kids school kids that and all these his words are this guy's torturing me. Please help me God. Well also Socorro County did not think it was enough so they didn't put them back on the van and send them on their way. Yeah and they stopped taking any more vans. That was not just everyone likes to say it's just for this one incident but it was it was more build-up but sorry. Well let me before you run out of time. Do you want to address anything about the distinction between malice and willful because I noticed that that's one of the issues that you've raised that that prevented you from having a fair trial. Yes so malice in in law is a term of art and that's why you have to give it a jury instruction on it to the jury because no one. Well willful is a term of art also according to our case law. Correct and I think they did get a definition of willfully. That's what the statute said that he was charged under willful. Yes but malice is commonly understood just to be bad purpose more than just bad like actually you know what what deliberately a different would be it's it's malicious right and they use they would both the government and the judge use the legal definition as a term of art if it wasn't a term of art it wouldn't be understood that way and I would like to reserve the last of my time. Okay we will stop your time. Judge Kelley did you have any questions? I have no questions. Okay we'll hear from the appellate. Good morning your honors. May it please the court Jonathan Backer for the United States. This court should affirm the jury's conviction of defendant Anthony Buntin for his abuse of pre-trial detainees in his custody during a multi-day prisoner transport. I'll briefly address the three issues that Buntin raises on appeal. First the trial record contains overwhelming evidence that Buntin willfully violated the 14th amendment by creating objectively serious conditions of confinement. Second the district court acted well within its great latitude to limit the scope of closing argument by precluding the defense from using a potentially confusing term to describe the willfulness element. And finally the district court's Allen instruction to which the defense never objected contained all the indicia of a proper non-coercive charge to continue jury deliberations. But this court need not wade into the record to resolve this appeal. Among the various issues and sub-issues that Buntin raises he has waived in whole or in part all of them except for the closing argument issue. So this court can affirm the jury's conviction on largely procedural grounds. I don't want to leave the court the impression that the United States is running away from the merits of this case so unless your honors have any questions about the forfeiture and waiver issues I'll move straight to the merits of the objectively serious conditions that occurred on this. Well the forfeiture issue on rule 29 issue you know the and says there is a prima facie case on all of the elements goes through all of the elements and then the district court says yeah I find that there's a prima facie case and we do have cases that say that once a district court adjudicates an issue on the merits whether or not it was sua sponte or not that that excuses the forfeiture. That's true your honor but you know I think if you look at the this is the initial rule 29 motion of course the question that you know initial rule 29 motion is waived when the defense does a renewed rule 29 motion that's Bowie this court's decision Bowie holds that proposition but even if you're looking at the initial rule 29 motion yes the United States identified the conditions at issue that arose to a constitutional violation but it didn't get into a full in-depth conversation of why you know the human waste the restraints the heat all collectively amounted to objectively serious conditions of confinement and tethering it to this case's this court's case law on those issues because it wasn't on notice that the defense was actually challenging the deprivation of a right element and so the United States would have gone into far more detail about why and developed the record much more for this court's benefit if it was on notice about so how do we write this waiver argument do we this waiver rationale do we say that well the government did address all of the merits but it didn't do it very long it was just an abbreviated recitation of the fact that all of the elements were satisfied it seems like a very slippery standard for us to articulate if I would say that the proper analysis is what did the defense say and again I think you start with the renewed motion that's and there's no question there all that all with regard to count to that the defense said at the renewed rules 29 motion was there was not the willfulness wasn't satisfied that's it and so there's no question and the United States you know responded commensurately to that and stains on our prior argument right yes but so even if and even if you look to the initial the defense specifically identified willfulness color of law bodily injury as the issues that they were raising in the world 29 motion and said nothing about deprivation of a right but again I don't want to get bogged down on the forfeiture and waiver issue because I think this case is so clear that there's overwhelming evidence of objectively serious conditions of confinement and you know that counsel you've couple of comments that really bother me in regards to the that what the government is obligated to do as I heard you say that you're only going to do the minimum that's necessary based upon what opposing counsel present and I tell you if that's your position you're on a slippery slope as far as I'm concerned oh no it's your burden as the government in every instance in your responsibility I'm sorry your honor if I left you with that impression no the United States went out of its way to address all of the elements of uh of this 242 conviction if you want to be clear that that's not what you were trying to tell me yes your honor all right thank you uh so going to the to the merits um you know in assessing whether there are objectively serious conditions of current confinement uh this court looks to the totality of the conditions on the van not just one by one human waste uh restraints heat and here there's an incredibly powerful heuristic that shows how all those conditions should be evaluated together we have not one but two detention centers that took unprecedented actions in response to what they observed when Bunton came to the facility so starting with Shawnee County uh where Bunton's trip uh culminated um officer Edwards viewed all the detainees coming in and noticed all these in his words unusual things um that they were wet to the touch that they had articles of clothing um mission that Abba Salam obviously had this uh very serious uh condition that that smelled like rot rotting flesh he said um and then therefore told his superior lieutenant Barnhill about what was going on called him in the middle of the night lieutenant Barnhill undertook his own investigation then called his superior uh Phelps uh who uh issued for the first time in the jail's history an order saying that these detainees cannot be released back to the custody of uh Mr. Bunton because it was so appalling the conditions that they witnessed um and similarly in Socorro County as uh Judge Baccarat uh noticed that the the uh that jail stopped having prisoner transports come to that facility altogether in response to the conditions that they observed so if this court's looking for a heuristic to kind of step back from the particulars here and say did it in in the totality were there objectively serious conditions um well that's clearly meant just based on what the the actions of these two facilities and the testimony from officer Edwards uh lieutenant Barnhill uh and and nurse Johnson um about just what they observed in the totality um at the culmination uh of this trip um I want to take a moment to just talk about uh the you know urine versus other bodily and I know it's gross talk about this but you know I just say that disdain uh itself cites to Johnson versus Lewis from the Ninth Circuit which was a case about exposure to uh to urine only and in fact the defense uh cited that that case so it is not true that urine cannot be the basis of a conditions of confinement claim focused on exposure to human waste in any event for all the reasons that uh that your honors have pointed out um they're aggravating circumstances here that made the so uh clearly object the objectively serious conditions of confinement here um and deliberate indifference I really don't think is that issue here because Bunton didn't just act with a deliberate indifference towards these conditions I mean he created them himself he's the one that prevented uh people from having restroom breaks for up to 36 and a half hours he's the one that in response to people speaking out against the conditions of confinement on the van restraining them behind their backs for long periods of time put them in a segregation cage denied them food water restroom breaks that other detainees received during those long periods of time he's the one that blasted detainees with hot air while they were complaining about the heat on the van while driving through the Arizona desert and said I've got something for you uh when he did that so he wasn't just deliberately deliberately indifferent he was consciously creating the conditions at issue and similarly with willfulness I mean uh Bunton just says that he acted at all times in accordance with his training well that's not true based on the testimony that I just mentioned um but in addition to that uh willfulness can be inferred from the plain wrongfulness of all those conditions it can be inferred from the fact that PTS policy required him to report any time that he restrained somebody behind their back any time they put them in the segregation kit for disciplinary reasons any time that he wasn't able to get them a restroom break beyond six hours and he and Mr. Esquion trip manager for this trip testified that he received no such reports um and it can also be inferred from uh Mr. Bunton's intimidation of witnesses and and doing them giving them favors that they perceived to be to make them quiet uh so there's multiple does that does does that argument run afoul of the acquittal on the separate charge against button for intimidation of witnesses I don't think so your honor um because this purview this court to reconcile inconsistencies and ensure jury's verdict if there's evidence in the record that supports the the verdict um then that's fair game for sufficiency of the evidence review but again we're not relying exclusively on uh the the intimidation as I mentioned there are many other indicia of that the Wilson willfulness uh element is satisfied um so I'm happy to answer any other questions uh about uh that issue uh or the closing argument uh or the Allen instruction but if your honors have no further questions uh we'll rest on the briefs Judge Kelly do you know I'm going to be first okay thank you uh and uh how much time does the appellant have okay you know I apologize to appellate counsel I took up so much of your time I'm going to give you uh two full minutes so I'm going to give you 57 extra seconds thank you your honor so one of the things I want to point out is that substantial risk of serious harm is an objective standard for the blasting heat we only have Mr. Yarberry and Mr. Kinney saying it's very hot and it's somewhere in the Arizona desert Arizona has many temperate regions and like in March it varied the temperature varies greatly so that is a subjective component and it was only for 20 minutes I mean case law is replete with even in dangerous ambient temperatures if it's less than 30 minutes it's perfectly well not perfectly fine from a humane standpoint but from an eighth amendment standpoint um in going back things like the clothing that wasn't in Mr. Button's control the inmates what the clothing was not in Mr. Button's control um they came on with what they came on with they got showers when they could those things were not within his control I mean he did the best he could under the circumstances but the circumstances themselves are are hard um he has to be he has to be cognizant of his safety he has to be cognizant of the safety of the other detainees he has to be cognizant of the safety of the public so he has to be sure that he's in control of that van and while he says that you know they're just talking out loud outside Riverdale they were yelling and shaking the van so hard it was rocking on rocking and they had to turn around and go back to Riverdale this is not it's not a serious risk of substantial harm because he had a penological reason for detaining Yarbrough and Kinney as he did and it just simply doesn't rise to the level it doesn't rise to the level of serious risk of substantial harm thank you well presented by both sides this matter will be submitted